# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD T. THISTLE SR., <br>         Plaintiff, <br> v. <br> BACKGROUNDCHECKS.COM, LLC, <br>         Defendant. | Case No.: <br><br> **COMPLAINT AND DEMAND** <br><br> **FOR JURY TRIAL** |

Plaintiff Richard T. Thistle Sr. ("Plaintiff"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Defendant Backgroundchecks.com LLC ("Defendant") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 et seq.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendant regularly transacts business within the District. Defendant

regularly directs business at the District. Defendant voluntarily and purposefully avails itself of the protections of the District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff is a natural person who resides in Pepperell, Massachusetts within the confines of Middlesex County. Plaintiff is a "consumer" as that term is defined by 15. U.S.C. § 1681a(c).

5. According to Defendant, Backgroundchecks.com's database "has over 650 million records and 22 million photos to search for an instant criminal record," and claims to be the "#1 online criminal conviction databases in the industry, based on an analysis of publicly available sources.".

6. Defendant serves "thousands of customers nationwide, from small businesses to Fortune 100 companies, by providing comprehensive screening services" to third-parties in exchange for monetary compensation. Further, according to Defendant, "By [the FCRA's] standards, background screening companies are consumer report agencies that the FCRA regulates." Therefore, Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

7. Defendant maintains a principal place of business located at 100 Centerview Drive Suite #300, Nashville, Tennessee 37214-3455. The Defendant can be served through its registered agent c/o Legalinc Corporate Service Inc., located at 5865 Ridgeway Center Parkway, Suite #389, Memphis, Tennessee 38120-4032.

8. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

9. Plaintiff is a seventy-three (73) year old man.

10. After losing his partner years ago, Plaintiff turned to various dating apps for companionship.

11. Amid the Covid-19 pandemic, Plaintiff's social life became entirely dependent on his access to a number of dating apps, including Plenty of Fish ("POF") and OK Cupid.

12. Near the end of 2021, Plaintiff upgraded his POF account to a paid subscription in order to increase his account's visibility and increase the chance of matching with other users.

13. Plaintiff continued to meet people and explore connections on POF and OK Cupid on a regular basis.

14. On or about March 23, 2022, Plaintiff received an email from OK Cupid that stated his account had been deactivated based on the information contained in a report provided by Backgroundchecks.com.

15. Plaintiff was extremely confused, as he had been a member of the OK Cupid platform for years, without issue.

16. Shortly after Plaintiff's OK Cupid profile was deactivated, he learned

that he had also been "banned" from POF based on a report provided by Defendant.

17. Upon information and belief, OK Cupid and POF purchased consumer reports from Defendant to assess Plaintiff's eligibility for membership.

18. Upon review of the report(s), Plaintiff realized Defendant had made an incredible mistake.

19. Defendant erroneously reported that Plaintiff was a sex offender, convicted of sending, selling, or distributing obscene matter depicting a minor.

20. Plaintiff was disgusted, shocked about the inaccurate information Defendant published about him.

21. Plaintiff was also greatly worried about who at OK Cupid and POF would see the report, and how far the information might be shared.

22. Plaintiff took to the internet to verify that he had not been mistakenly labeled a "sex offender" in other public records.

23. A cursory review of the public records revealed that no person with Plaintiff's name and date of birth was a registered sex offender.

24. After conducting his own search, Plaintiff returned to the report for a closer review. At that point, Plaintiff became extremely frustrated.

25. A cursory review of the report itself clearly proves that Plaintiff is not the sex offender responsible for the crime listed on his consumer report.

26. Plaintiff's full name is Richard T. Thistle Sr. Upon information and belief, the sex offender's name is Richard K. Thistle Jr.

27. Defendant's report included a photo of the man responsible for the alleged crime, and the man in the photo did not at all resemble Plaintiff.

28. Defendant's report included the sex offender's birthdate, 02/24/1950, which differed from Plaintiff's birthday, 02/25/1949.

29. Defendant's report indicated the sex offender lived (and registered) in California, where Plaintiff had never lived.

30. Plaintiff could not understand how Defendant managed to match the erroneous record with his information. However, he was hopeful that the blatancy of the inaccuracy would allow him to regain access to the dating apps after speaking to a representative.

31. On or about March 24, 2022, Plaintiff reached out to POF's customer service to explain that the sex offender record in the backgroundchecks.com report did not belong to him.

32. In response, the POF representative simply stated that there was nothing he could do and explained that the ban was permanent.

33. Plaintiff's devastation at losing access to his accounts was heightened by the implication that his name was the cause of the match, suggesting that he was nearly powerless to avoid the problem in the future.

34. Not only did the sudden deactivation of his dating apps immediately disrupt the connections he was building with other users, but the "permanent" ban completely destroyed any opportunity to develop future connections.

35. Upon information and belief, OK Cupid and POF both pay Defendant to provide background reports to them.

36. Upon information and belief, OK Cupid and POF use Defendant's background reports to make decisions about current and prospective users' eligibility to use their platform(s).

37. Upon information and belief, Defendant's procedures do not require it to obtain information from the public records, rather, depending on the type of report purchased, Defendant will only search their "proprietary criminal database.".

38. Upon information and belief, Defendant included the erroneous sex offense in Plaintiff's consumer report without verifying that the record matched his full name or date of birth.

39. Plaintiff has never been convicted of sending, selling or distributing obscene matter depicting a minor.

40. Upon information and belief, Defendant included the erroneous sex offense without verifying that Plaintiff had ever lived in the state in which the sex offender was registered.

41. A cursory review of the public court records clearly shows that the sending, selling, or distributing obscene matter conviction belongs to an individual with a different name and date of birth than Plaintiff.

42. It is wholly unreasonable for Defendant to maintain procedures that allow it to report criminal records information that contradicts the public record.

43. Defendant knows that its services are used to make significant consumer decisions, and even devote a section of their website to notifying potential customers that they are required to follow FCRA requirements in their utilization of consumer reports prepared by Defendant.

44. As a direct result of Defendant's inaccurate reporting and failure to maintain reasonable procedures to ensure maximal accuracy of the information it includes in consumers' reports, Plaintiff was permanently banned from OK Cupid and POF.

45. Plaintiff is entirely reliant upon dating apps for regular interaction with other adults.

46. Moreover, POF was Plaintiff's favorite app for meeting people to date and simply socialize with, which is why he had upgraded to a paid subscription.

47. Plaintiff was also concerned that the people he had met through the dating apps would learn of the inaccurate information and believe he was a sexual predator.

48. Plaintiff was understandably distraught at the thought that his online and/or offline reputation would thus be permanently befouled.

49. As a direct result of Defendant's inaccurate reporting, Plaintiff suffered embarrassment, anxiety, sleeplessness, emotional pain, and mental anguish.

50. As a direct result of Defendant's inaccurate reporting, Plaintiff suffered, and continues to suffer, actual damages, including but not limited to: emotional

distress, mental anguish, humiliation, embarrassment, stress, and damage to reputation.

## COUNT I

### Defendant's Violations of 15 U.S.C. § 1681e(b)

51. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

52. Backgroundchecks.com is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681(f) because the company regularly uses the internet to collect and assemble consumer information and thereafter attempts to sell consumer reports to third parties.

53. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681a(d)(1)(C).

54. The FCRA defines a "consumer report" as: "any written, oral, or other communication of any information by a CRA bearing on a consumer's …character, **general reputation**, personal characteristics, or mode of living…" 15. U.S.C. §1681a(d)(1)(emphasis added).

55. In the parlance of the FCRA, background reports used for a legitimate business need, such as assessing a consumer's eligibility for a benefit, are "consumer reports." 15 U.S.C. § 1681b(a)(3)(F).

56. Defendant's disclosures constitute "consumer reports" as defined by 15 U.S.C. § 1681a(d) because Defendant's reports, including that prepared with respect

to Plaintiff, include information such as court or arrest records, and purport to reflect the character and/or general reputation of the subject.

57. The FCRA provides a number of protections for consumers who are subject to background reports, including those seeking "to be included in a computer dating service." 16 CFR Ch. 1, Pt. 600 App.

58. The FCRA imposes duties on consumer reporting agencies, like Defendant, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

59. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.".

60. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report.

61. Specifically, Defendant failed to establish, maintain, and/or follow procedures to prevent it from inaccurately reporting Plaintiff as a registered sex offender.

62. As a direct result of Defendant's conduct, actions, and inaction, Plaintiff suffered actual damages as detailed herein.

63. Defendant's violations of 15 U.S.C. § 1681e(b) were willful and knowing. Further, Defendant's violations were committed in reckless disregard of Plaintiff's rights as a consumer. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages as determined by the Court at trial. 15 U.S.C. § 1681n.

64. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent, rendering it liable for Plaintiff's statutory and actual damages. 15 U.S.C. § 1681o.

65. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

66. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Richard Thistle Sr., respectfully requests judgment be entered against Defendant, for the following:

    a. Actual damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

    b. Statutory damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

    c. Punitive damages pursuant to 15 U.S.C. § 1681n;

    d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

  e. Any pre-judgment and post-judgment interest as may be allowed under the law; and

  f. Other and further relief as the Court may deem just and proper.

Respectfully submitted this 9th day of May 2022,

            */s/ Nicola S. Yousif*
            Nicola S. Yousif
            MA No. 679545
            Law Offices of Attorney Nick Yousif, LLC
            157 Belmont Street,
            Brockton, MA 02301
            T: (508) 588-7300
            E: nick@yousiflaw.com

            *Attorney for Plaintiff*
            *Richard T. Thistle Sr.*